IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROBERT MARTIN                                                                                           PLAINTIFF

v.                                          4:20-cv-01361-LPR-JJV

KRISTIE FLUD, Administrator,
Lonoke County Detention Center, *et al*.                                                      DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Lee P. Rudofsky. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

**DISPOSITION**

**I.   BACKGROUND**

Robert Martin ("Plaintiff") sued multiple individuals employed by or providing services at the Lonoke County Detention Center ("Detention Center"). (Docs. 2, 19.) According to Plaintiff, Defendants failed to ensure he received necessary medical treatment while being held at the Detention Center. (Doc. 19.) Only his personal capacity claims of deliberate indifference to serious medical needs against Sheriff John Staley, Deputy Sarah Maness, Detention Center Administrator Kristie Flud, and Detention Center Medical Administrator Jestiny Gibson (collectively, "Defendants") remain pending. (Docs. 18, 32, 40, 41.)

Defendants now have filed a Motion for Summary Judgment. (Docs. 50-52.) Plaintiff has not responded and the time for doing so has passed. (Doc. 54.) Because Plaintiff did not controvert any material facts set forth by Defendants in their statement of undisputed material facts, all material facts submitted by Defendants (Doc. 52) are deemed admitted. *See* Local Rule 56.1(c) of the Eastern and Western Districts of Arkansas; FED. R. CIV. P. 56(e).

For the reasons set out below, I recommend Defendants' Motion for Summary Judgment (Doc. 50) be GRANTED and Plaintiff's claims be DISMISSED with prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. DISCUSSION

### A. Plaintiff's Claims

Mr. Martin states at the time he entered the Detention Center, he had a gallbladder infection requiring surgery and later suffered severe chest and stomach pains. (Doc. 19.) Plaintiff maintains he had been to the hospital twice for his gallbladder before being incarcerated. (*Id*. at 7.) Plaintiff asserts his doctors informed him he needed surgery but has provided no evidence in support of his assertion. He believes Defendants failed to ensure that he received the necessary medical care for his preexisting medical condition. (*Id*.)

### B. Facts

Mr. Martin was incarcerated from October 5, 2020 to April 1, 2021.[1] (Doc. 52, Ex. 1 at ¶ 2.) Upon booking, on October 5, 2020, Mr. Martin was taken to the emergency room at CHI St. Vincent. (Doc. 52, Ex. 1B.) He was diagnosed with "back pain, methamphetamine abuse, and neck pain." (*Id*.) Plaintiff's records from his visit to CHI St. Vincent do not reflect that he had an infection, a problem with his gallbladder, or that he required surgery. (*Id*.)

Mr. Martin was receiving care from Darrell Elkin, DNP, PA, RNP, BSE, who provides medical services for the Detention Center.[2] (Doc. 52, Ex. 2.) Mr. Elkin first saw Plaintiff on approximately October 13, 2020, in connection with his mental health medications. (Doc. 52, Ex.

---

[1] Mr. Martin was incarcerated at the Detention Center on a probation violation; he was also serving a 120-day sentence on new charges. (Doc. 19 at 4.)

[2] Claims against Mr. Elkin were dismissed because Plaintiff failed to indicate any deliberate indifference on Mr. Elkin's part in the Complaint. (Docs. 18, 40.)

3

2A.)  Roughly two weeks later, on October 28, 2020,³ Mr. Martin complained to Mr. Elkin of abdominal pain he thought was coming from his medication.  (Doc. 52, Exs. 1C at 000049 and 2A.)  On exam, "there was no discoloration or distention of [Plaintiff's] abdomen.  [Plaintiff] had no fever, nausea, or vomiting."  (*Id*.)  He was asked to contact a Correctional Officer if he witnessed blood in his stool.  (*Id*.)  Mr. Elkin's records state, "We requested the medical records from [Plaintiff's] PCP as well as the acute care settings [Plaintiff] stated he had been to."  (Doc. 52, Ex. 2A.)

Mr. Elkin saw Mr. Martin again on December 2, 2020.  (*Id*.)  During that visit Plaintiff complained that his medications were not working.  (Doc. 52, Exs. 1C at 000058, 000060, 000072, 000075 and 2A.)  He again displayed no fever or vomiting, and did not mention diarrhea, constipation, or "blood."  (Doc. 52, Ex. 2A.)

During a January 4, 2021 visit, Plaintiff complained to Mr. Elkin that his "right left side" was hurting.  (Doc. 52, Exs. 1C at 000106 and 2A.)  Mr. Elkin reported that "[his] gall bladder is hurting" while pointing to Plaintiff's left upper quadrant.  (Doc. 52, Ex. 2A.)  Mr. Elkin noted no discoloration or distention or guarding, and Mr. Martin refused the clear liquid diet Mr. Elkin prescribed .  (*Id*.)  About a week later, Mr. Elkin again saw Plaintiff who denied fever, nausea, vomiting, diarrhea, and constipation.  (*Id*.)  Mr. Martin also did not mention "bloody show with bowel movements."  (*Id*.)

Mr. Elkin notes the only medical records the Detention Center could obtain were those from Plaintiff's October 5, 2020 visit to CHI St. Vincent.  (*Id*.)  Those records do not mention any problem or discomfort associated with "gastrointestinal ideology."  (Doc. 52, Exs. 2A and 2B.)

---

³ The record reflects that this visit took place on October 28, 2021.  (Doc. 52, Ex. 2A.)  Because Plaintiff was no longer incarcerated at the Detention Center in October 2021, the Court assumes the correct date of the visit was October 28, 2020.

Mr. Elkin provided care to Mr. Martin on five occasions. According to Mr. Elkin, Plaintiff never presented "in any obvious pain/discomfort, was never in any distress. [Plaintiff's] clinical presentation never aligned with either [Mr. Elkin's] subjective or objective medical findings." (Doc. 52, Ex. 2A.)

Mr. Martin says he "went to the hospital 2 times since [he] had been [in the Detention Center] to 2 different hospitals for 2 different things" and a doctor gave him "the name and number etc. about who to go through to get the surgery." (Doc. 52, Ex. 1C at 000129.) But he provides no evidence in support of his claims. Even the records in evidence from CHI St. Vincent are silent as to any gallbladder issues and only reflect that Plaintiff was diagnosed only with "back pain, methamphetamine abuse, and neck pain." (Doc. 52, Ex. 1B.)

C. **Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. The prohibition on cruel and unusual punishment gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual

knowledge of, but deliberately disregarded, that need. *See Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th 2009).

### D.   Qualified Immunity

Defendants argue they are entitled to qualified immunity. Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*.

For the following reasons I find Mr. Martin has failed to establish a violation of a constitutional or statutory right. Accordingly, as explained more fully below, Defendants are entitled to qualified immunity.

### E.     Analysis

#### 1.     Defendant Gibson

In support of Defendants' Motion for Summary Judgment, Defendants submitted the affidavit of Defendant Jestiny Gibson, the Medical Administrator for the Detention Center. (Doc. 52, Ex. 1 at ¶ 1.) Defendant Gibson manages the inmate medical requests, schedules appointments, requests medical records, and works with the Arkansas Division of Correction ("ADC") to schedule or approve medical appointments. (Doc. 52, Ex. 1 at ¶ 5.) Defendant Gibson attached to her affidavit Plaintiff's medical requests filed while he was in custody at the Detention Center. (Doc. 52, Exs. 1 at ¶ 12 and 1C.) "When [Plaintiff] [sent] a medical it [went] straight to . . . [Defendant] Gibson." (Doc. 52, Ex. 1C at 000117.)

Mr. Martin filed numerous medical requests in which he complained of stomach, chest, or side pain, or referenced needing surgery. The first such medical request is dated October 12, 2020. (Doc. 52, Ex. 1C at 000035.) In that request, he complained that he has "been to the hospital 2 times and [he] [has] to have surgery." (*Id*.) Defendant Gibson responded: "The doctor was here yesterday. He is aware of this situation because he is the one that had you sent to the hospital." (*Id*.) Plaintiff again referenced surgery and submitted general requests from October 2020 to February of 2021. (*Id*. at 000038, 000042, 000045, 000044, 000045, 000058, 000060, 000064, 000067, 000090, 000091, 000095, 000102, 000108, 000113, 000115, 000117, 000119, 000125, 000128, 000129, 000139, 000147). Plaintiff's complaints about his gallbladder and related pain cover that same time frame. (*Id*. at 000040, 000042, 000046, 000048, 000049, 000058, 000060,

000065, 000073, 000074, 000075, 000076, 000087, 000098, 000106, 000107, 000112, 000114, 000119, 000123, 000126, 000127, 000134, 000142, 000144, 000148, 000149.)

Defendant Gibson responded to all medical requests in the record. Her responses varied from informing Mr. Martin she would need to talk to the doctor about an issue, to letting him know she received the request, to telling him she had not had time to call a hospital, to explaining that she had to secure ADC approval before treatment could be provided, to saying when he would see the doctor, to eventually explaining that the hospital records Defendant Gibson received reflect nothing about Plaintiff's gallbladder or a follow-up appointment. (Doc. 52, Ex. 1C at 000038, 000042, 000058, 000060, 000075, 000109, 000125, 000128.) According to Defendant Gibson, she ordered the medical records Plaintiff claimed to have, but the only medical record she could verify was in connection with Mr. Martin's October 5, 2020 visit to CHI St. Vincent.[4] (Doc. 52, Ex. 1 at ¶ 7.) The hospital paperwork Defendant Gibson submitted failed to state anything about his gallbladder. (Doc. 52, Ex. 1C at 000125.)

I note that Defendant Gibson did - on one or two occasions - tell Mr. Martin she had not yet had time to take care of his request (Doc. 52, Ex. 1C at 000109, for example), but this fails to amount to deliberate indifference to Plaintiff's serious medical needs. Defendant Gibson offered for Plaintiff to see the doctor, sent requests to the ADC for approval for medical treatment, and sent off medication refill orders. (*Id.* at 000058, 000065, 000076, 000086, 000091, 000095, 000096, 000120).

To succeed on an inadequate medical care claim, a prisoner must prove that he had an objectively serious medical need; and prison officials subjectively knew of, but deliberately

---

[4] The Court notes that as of February 8, 2021, Defendant Gibson had not requested any medical records from "[J]efferson county due to [Plaintiff] not being in that hospital while in [the Detention Center]." (Doc. 52, Ex. 1C at 000148.)

8

disregarded, that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-08 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Moreover, negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Furthermore, an official who is not involved in medical decisions and has no medical expertise cannot be liable for medical staff's diagnostic decisions. *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

Mr. Martin has failed to show he was receiving constitutionally inadequate medical care. Based on the record before me, he was receiving ongoing medical care. Defendant Gibson made repeated efforts to ensure he received that care. Plaintiff simply disagreed with the diagnosis and treatment. At most, Defendant Gibson was negligent in timely requesting some of Plaintiff's medical records. And Plaintiff has not offered any evidence to show that Defendant Gibson's slow request for some of Plaintiff's medical records resulted in delayed medical treatment that had a detrimental effect on him. *See Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997) (to survive summary judgment "[a]n inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment"). As such, Plaintiff's claims against Defendant Gibson fail.

### 2. Defendant Flud

Plaintiff asserts Defendant Flud, as the "medical staff boss," failed to ensure he received necessary treatment. (Doc. 19 at 5.) As set out above, medical requests went directly to Defendant Gibson. Defendant Flud responded to a number of general requests Mr. Martin filed and some of these requests raised medical issues. (Doc. 52, Ex. 1C at 000056, 000057, 000064, 000129, for

example.) When Plaintiff complained about his gallbladder and surgery, Defendant Flud responded that she would "have medical give [her] the paperwork [Plaintiff was] speaking of so that [she could] look over this." (*Id*. at 000129.) There is no evidence in the record that Defendant Flud was deliberately indifferent to Plaintiff's medical needs. Further, nothing in the record suggests Defendant Flud is a medical professional; she would have been justified in relying on a medical professional's diagnosis and course of treatment. *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Likewise, Defendant Flud cannot be held liable for Plaintiff's diagnosis and course of treatment. Lastly, there is no supervisory liability in 42 U.S.C. § 1983 claims. *Wise v. Lappin*, 674 F.3d 939, 942 (8th Cir. 2012).

### 3. **Defendant Staley**

Mr. Martin says Sheriff Staley was "over the medical staff[s]" and "knew about [his] medical situation on having to have a gallbladder surgery" but did nothing to help ensure he receive needed medical care. (Doc. 19 at 5.) He alleges that Defendant Staley said he would not be sent to the hospital or have surgery while at the Detention Center. (*Id*.) But Plaintiff submits no evidence to support this claim. The record contains no evidence that Defendant Staley was deliberately indifferent to Plaintiff's serious medical needs. Nothing in the record suggests Defendant Staley was a medical professional; he could not have diagnosed or treated Plaintiff. *Holden*, 663 F.3d at 343. Accordingly, where Plaintiff's challenge appears to be his diagnosis and course of treatment, there is no basis on which to hold Defendant Staley liable. Additionally, there is no supervisory liability in 42 U.S.C. § 1983 claims. *Wise*, 674 F.3d at 942. For all these reasons, the claims against Defendant Staley fail.

### 4. Defendant Maness

A prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Amended Complaint, however, is silent as to how Defendant Maness was personally involved in the alleged inadequate medical care. (Doc. 19.) Nothing in the record suggests Defendant Maness, a Deputy at the Detention Center, is a medical professional who could have diagnosed or treated Plaintiff. *Holden*, 663 F.3d at 343. Accordingly, where Plaintiff's challenge appears to be his diagnosis and course of treatment, there is no basis on which to hold Defendant Maness liable. Additionally, there is no supervisory liability in 42 U.S.C. § 1983 claims. *Wise*, 674 F.3d at 942. For all these reasons, the claims against Defendant Maness fail.

### 5. Proof With Proof

At this stage, Plaintiff was required to meet proof with proof. To survive summary judgment, allegations must be supported by evidence creating a genuine issue of material fact. *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Plaintiff, however, has failed to provide any evidence that raises a genuine issue of material fact. On the record before me I find no Defendant acted with deliberate indifference to Mr. Martin's serious medical needs. As such, summary judgment in Defendants' favor is appropriate.

## IV. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 50) be GRANTED;

2. Claims against Defendants Gibson, Flud, Staley, and Maness be DISMISSED with prejudice.

3. This case be CLOSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 3rd day of November 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE